**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| ROSALYN PARKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE DUFRESNE SPENCER GROUP, LLC d/b/a ASHLEY FURNITURE HOMESTORE,<br><br>Defendant. | Civil Action No. 4:24-02202 |

<u>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**</u>

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND SUMMARY ...............................................................................................1

   A.   The Litigation .................................................................................................................1

   B.   Arm's Length Settlement Negotiations .........................................................................2

   C.   Preliminary Approval of the Settlement........................................................................2

III. THE SETTLEMENT.............................................................................................................2

   A.   The Settlement Class .....................................................................................................2

   B.   The Settlement Benefits.................................................................................................3

      1.   Reimbursement for Documented Out-of-Pocket Losses ...................................3

      2.   Reimbursement for Documented Extraordinary Losses....................................4

      3.   Reimbursement for Attested Lost Time ............................................................4

      4.   Alternative Cash Payment .................................................................................4

      5.   Credit Monitoring and Identity Theft Protection Services ...............................5

      6.   Information Security Improvements...................................................................5

      7.   Costs of Notice to Settlement Class Members, Claims Administration, Attorney's Fees, Costs, and Expenses, and the Service Award to the Class Representative ...................................................................................................6

IV. PRELIMINARY APPROVAL, NOTICE, AND CLAIMS ADMINISTRATION.................6

   A.   The Notice Program.......................................................................................................7

   B.   The Claims Process, Opt-Outs and Objections ...........................................................10

V. LEGAL STANDARD ...........................................................................................................11

VI. ARGUMENT.......................................................................................................................12

   A.   The Settlement is Fair, Reasonable and Adequate ......................................................12

      1.   The Court should presume the Settlement is Fair, Reasonable, and Adequate ............13

2.    The Complexity, Expense, and Likely Duration of the Litigation Favors Approval of the Settlement ..................................................................................14

3.    The Stage of the Proceedings and Discovery Completed Supports Approval ..............15

4.    The Probability of Plaintiff's Success on the Merits Weighs in Favor of Approval..........................................................................................................16

5.    The Settlement Falls Within the Range of Possible Recovery Based on Similar Lawsuits in This Area of Law...................................................................16

6.    The Opinions of Class Counsel, the Class Representative, and the Reaction of absent Settlement Class Members Strongly Favors Final Approval............................18

B.    The Settlement Class Should Be Finally Certified for Settlement Purposes.....................19

1.    The Settlement Class Meets the Criteria of Rule 23(a) ..................................................21

a.    Numerosity ...............................................................................................................21

b.    Commonality ............................................................................................................21

c.    Typicality...................................................................................................................22

d.    Adequacy ..................................................................................................................22

2.    The Settlement Class Satisfies Rule 23(b) ....................................................................23

a.    Predominance ...........................................................................................................23

b.    Superiority ................................................................................................................24

C.    Plaintiff's Motion for Award of Attorneys' Fees, Costs, and Service Award...................24

1.    The Requested Award of Attorneys' Fees, Costs, and Expenses is Reasonable...........24

2.    The Requested Service Award for the Class Representative is Reasonable ................25

VII. CONCLUSION ...........................................................................................................26

## I.    INTRODUCTION

Plaintiff Rosalyn Parker ("Plaintiff" and "Class Representative") submits this Unopposed Motion for Final Approval of the Class Settlement in this matter. Plaintiff respectfully moves the Court to finally approve the Settlement with The Dufresne Spencer Group, LLC d/b/a Ashley Furniture Homestore ("Defendant" or "Dufresne") as fair, reasonable, and adequate, and in the best interest of the Settlement Class. With this Settlement, Plaintiff has achieved what they set out to accomplish with this case. Following Dufresne's Data incident in 2023, Plaintiff sought to have Dufresne compensate Settlement Class Members for the losses they suffered, protect them from the losses they may suffer, and improve its data security practices; and if granted final approval, the Settlement will provide all of that through the Settlement benefits.

## II.    BACKGROUND SUMMARY

### A.  The Litigation

Plaintiff alleges that between May 15, 2023, and June 5, 2023, Dufresne experienced a data incident whereby an unauthorized party accessed and/or acquired certain files on Dufresne's systems ("Data Incident"). *See* Dkt. 1, Complaint at ¶ 2. Plaintiff further alleges that during the Data Incident, an unauthorized party gained access to certain types of personal information, including names, dates of birth, driver's licenses, banking information (*i.e.,* account number, routing number), digital signatures, among other personal information (collectively "Private Information"). *Id*. Following this Data Incident, Defendant mailed notice to affected individuals on or around May 7, 2024. After receipt of Dufresne's notification letter, Plaintiff filed a putative class action complaint asserting various claims against Dufresne relating to the Data Incident (the "Litigation"). Dufresne denies Plaintiff's allegations in this Litigation and denies any wrongdoing. S.A. § III.

### B. Arm's Length Settlement Negotiations

Recognizing the benefits of early resolution of Plaintiff's and the Settlement Class Members' claims, the parties agreed to explore settlement. The parties participated in arm's length negotiations, which included a full-day mediation facilitated by well-respected neutral Bruce Friedman of JAMS. The parties did not discuss the Plaintiff's Service Award or Class Counsel's attorney's fees and costs until after reaching an agreement on the relief for the Settlement Class. At the conclusion of the mediation, the parties arrived at a settlement in principle. Subsequently, during the months that followed the mediation, the parties diligently negotiated and circulated multiple drafts of the Settlement Agreement, along with accompanying draft Notice documents, a Claim Form, and other exhibits, and agreed upon a Claims Administrator and Credit Monitoring and Identity Theft Protection Services. Ultimately, the parties finalized and executed the Settlement Agreement on October 8, 2025. *See* Dkt. 19-1, Exhibit 1.

### C. Preliminary Approval of the Settlement

On October 8, 2026, Plaintiff filed an unopposed motion for preliminary approval of the Settlement and certification of the Settlement Class for settlement purposes. *See* Dkt. 19. The Court held a hearing for Plaintiff's motion for preliminary approval on November 4, 2025, granted Plaintiff's motion for preliminary approval, and set the Final Fairness Hearing for March 4, 2026 (*see* Dkt. 21-23), at which time the Court will decide whether to grant final approval of the Settlement and whether to grant Plaintiff's Motion for Award of Attorney's Fees and Costs and Service Award to Plaintiff.

### III.    THE SETTLEMENT

### A. The Settlement Class

The Settlement provides for the certification of the Settlement Class defined as:

2

> All persons residing in the United States who were sent written notification by Dufresne Spencer Group that their Private Information was potentially accessed, viewed, and/or obtained as a result of the Data Incident that occurred between May 15, 2023 and June 5, 2023. *See* S.A. § IV.1.24.

The Settlement Class specifically excludes: (i) Dufresne, the Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id.*

## B.  The Settlement Benefits

The Settlement provides Settlement Class Members with timely benefits targeted at remediating the specific harms they have suffered as a result of the Data Incident. The benefits of the Settlement are available to all Settlement Class Members and, significantly, there is no cap on the aggregate amount that will be paid for monetary claims, ensuring that every Settlement Class Member who submits a Valid Claim will receive Settlement Benefits. Specifically, the Settlement makes the following Settlement Benefits available to all Settlement Class Members:

### 1.  Reimbursement for Documented Out-of-Pocket Losses

Settlement Class Members are eligible to submit a Claim Form, along with necessary supporting documentation, for reimbursement of the following documented out-of-pocket expenses, not to exceed $500 per Settlement Class Member, that were incurred as a result of the Data Incident: (i) unreimbursed bank fees; (ii) long distance phone charges; (iii) cell phone charges (only if charged by the minute); (iv) data charges (only if charged based on the amount of data used); (v) postage; and (vi) gasoline for local travel purchased by Settlement Class Members between May 15, 2023 and the Claims Deadline. S.A. § IV.2.1.1(a). In addition, all Settlement

3

Class Members who submit a Valid Claim using the Claim Form and necessary supporting documentation, are eligible to receive reimbursement for credit reports, credit monitoring, or other identity theft insurance products purchased between May 15, 2023, and the Claims Deadline, not to exceed $500 per Settlement Class Member. S.A. § IV.2.1.1(b).

### 2. Reimbursement for Documented Extraordinary Losses

Settlement Class Members are also eligible to submit a Claim Form, along with necessary supporting documentation, for reimbursement of documented Extraordinary Losses, not to exceed $2,500 per Settlement Class Member for documented monetary losses if the loss: (i) is actual, documented, and unreimbursed; (ii) was more likely than not caused by the Data Incident; (iii) occurred between May 15, 2023, and the Claims Deadline; and (iv) is not already covered by one or more of the above-referenced reimbursable expense categories under Documented Monetary Losses. S.A. § IV.2.1.1(c).

### 3. Reimbursement for Attested Lost Time

Settlement Class Members are also eligible to submit a Claim Form to receive reimbursement for up to four (4) hours of Attested Lost Time spent dealing with the Data Incident (calculated at the rate of $20 per hour) if the Settlement Class Member (i) attests that any claimed lost time was spent responding to issues raised by the Data Incident; and (ii) provides a checkbox style description, or written description if no checkbox is applicable, of how the claimed lost time was spent related to the Data Incident. S.A. § IV.2.1.2.

### 4. Alternative Cash Payment

Alternatively, in lieu of submitting a claim for Documented Out-of-Pocket Losses, Documented Extraordinary Losses, or Attested Lost Time, Settlement Class Members may submit a claim for an Alternative Cash Payment of $45.00, which may be combined with a request for

Credit Monitoring and Identity Theft Protection Services. S.A. § IV.2.1.3.

### 5.   Credit Monitoring and Identity Theft Protection Services

All Settlement Class Members shall have the ability to make a claim for two (2) years of Credit Monitoring and Identity Theft Protection Services. S.A. § IV.2.3. Settlement Class Members electing to receive this settlement benefit may also submit a claim for monetary compensation. Dufresne will pay for the Credit Monitoring and Identity Theft Protection Services, which will be provided by CyEx, separate and apart from other Settlement Benefits. S.A. § IV.2.3. The Credit Monitoring and Identity Theft Protection Services, which is called Financial Shield Total, will provide certain services to each participating Settlement Class Member, including: 3-Bureau Credit Monitoring; Monthly Credit Score; Bank and Financial Account Monitoring; Financial Transaction Monitoring; Home Title Monitoring; Spend Tracking by Category; Fictitious Identity Monitoring; Score Tracker; Change of Address Monitoring; Real-Time Inquiry Alerts; Real-Time Authentication Alerts; Dark Web Monitoring; High-Risk Transaction Monitoring; Lost Wallet Protection; $1,000,000 Identity Theft Insurance; Security Freeze Assist; Victim Assistance; and Customer Support. *See* Dkt. 19-4, Declaration of Jerry Thompson on behalf of CyEx, LLC ¶ 8. The Credit Monitoring and Identity Theft Protection Services provided by CyEx is valued at $32.95 per month (or $790.80 for the two-year subscription) for each participating Settlement Class Member electing to receive that benefit. *Id*.

### 6.   Information Security Improvements

Separate from and in addition to the other Settlement Benefits in the Settlement, Dufresne has implemented or will implement various security related measures. S.A. § IV.2.3. The costs associated with these information security improvements will be paid by Dufresne separate and apart from the other Settlement Benefits. *Id*.

**7.  Costs of Notice to Settlement Class Members, Claims Administration, Attorney's Fees, Costs, and Expenses, and the Service Award to the Class Representative**

The Settlement provides that Dufresne will pay for the costs of Notice to the Settlement Class Members, costs of Claims Administrator, including the costs of Claims Administration and any costs for dispute resolution.[1] Defendant has also agreed to pay for Plaintiff's attorney's fees, costs, and expenses. S.A. §§ IV.2.6, 3.2. The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or service award to Plaintiff, as provided for in S.A. §§ IV.7.2, 7.3, until after the substantive terms of the settlement had been agreed upon, other than that Dufresne would not object to a request for reasonable attorneys' fees, costs, expenses, and a service award to Plaintiff as may be ordered by the Court. S.A. § IV.7.1. Subject to Court approval, Dufresne has agreed not to object to an award of attorneys' fees, costs and expenses of the Litigation in an amount not to exceed $300,000. S.A. § IV.7.2. Also, subject to Court approval, Dufresne has agreed not to object to a request for a service award in the amount of $2,500 to the named Plaintiff. S.A. § IV.7.3.

Dufresne shall pay any attorneys' fees, costs, expenses and any Service Award to Plaintiff separate and apart from any benefits provided to Settlement Class Members and the costs of Notice and Claims Administration. S.A. § IV.7.1. Accordingly, these payments will not in any way reduce the consideration being made available to the Settlement Class as described herein. S.A. § IV.7.5.

## IV.    PRELIMINARY APPROVAL, NOTICE, AND CLAIMS ADMINISTRATION

On October 8, 2025, Plaintiff moved the Court to grant preliminary approval of the Settlement. Dkt. 19. After considering Plaintiff's motion and holding the hearing on Plaintiff's motion for preliminary approval, the Court granted preliminary approval of the Settlement on

---

[1] Simpluris anticipates class notice and administration expenses of approximately $68,469.00. *See* Declaration of Simpluris Inc. submitted with Plaintiff's Motion ("Simpluris Decl.") ¶ 25.

November 4, 2025 (Dkt. 21), thereby certifying the Settlement Class for settlement purposes, approving the proposed Notice to the Settlement Class, and ordering the Claims Administrator to proceed with issuing Notice to the Settlement Class Members. Since then, the parties and the Claims Administrator have proceeded with the notice and claims process pursuant to the terms of the Settlement Agreement.

### A. The Notice Program

The Settlement provided for dissemination of Notice to Settlement Class Members in multiple ways to best ensure Notice was provided in a reasonable and practical manner. The parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Here, the Notice to Settlement Class Members was designed to meet all the criteria set forth by Due Process clauses of the United States and Texas Constitutions and Federal Rule of Civil Procedure 23. *See* S.A. Exs. A-B. Also, the Notices themselves were clear and straightforward. S.A, Exhibits A and B. The Notices defined who is a Settlement Class Member and clearly outline the options available to them and the deadlines for taking action. *Id*. The Notices disclosed the essential terms of the Settlement, including the Service Award for the Class Representative and the amount Class Counsel intended to seek in attorneys' fees, costs, and expenses. *Id*. The Notices also explained the procedures for submitting claims, requesting exclusion from the Settlement or submitting an objection. *Id*. Plus, the Notices alerted the Settlement Class Members to the date, time, and place of the Final Fairness Hearing and to the contact information for Class Counsel. *Id*.

The Claims Administrator was charged with providing Notice to the Settlement Class Members via direct mail, receiving Claim Forms and any requests from exclusion from the Settlement Class, and administration of the Settlement. This included establishing and maintaining the Settlement Website (www.DSGSettlement.com), a toll-free phone number dedicated to the Settlement, processing and reviewing Settlement Class Members Claim Form submissions, as well as any requests for exclusion or objections, and and other requirements of the Settlement Agreement. S.A. § IV.3.2; Simpluris Decl. ¶ 4.

On October 17, 2025, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, the Claims Administrator completed notice to the appropriate state and federal Attorneys General regarding the Settlement. *See* Simpluris Decl. ¶ 5, Exhibit A. Following the Court's Preliminary Approval Order, on November 12, 2025, Defendant's counsel provided the Claims Administrator with the most current name and physical address, of each Settlement Class Member as such information was contained in its records. S.A. § IV.3.2(a); Simpluris Decl. ¶ 8. The Claims Administrator reviewed and formatted the data in order to provide Notice to the Settlement Class Members. Through that process, the Claims Administrator removed duplicates and confirmed the final class list contained 65,562 Settlement Class Members. Simpluris Decl. ¶ 9.

On December 19, 2025, the Claims Administrator distributed direct mail notice via postcard (the "Short Notice") to the 65,562 Settlement Class Members in the form of the Short Notice approved by the Court. *Id*. ¶ 10, Exhibit B. As of February 24, 2026, 10,446 of the Short Notices were returned by the United States Postal Services (USPS). *Id*. ¶ 11. The Claims Administrator remailed 8,800 returned notices to either a newfound address located through the Claims Administrator's efforts to obtain an updated address or the forwarding address provided by USPS, and ultimately 1,646 of the notices were undeliverable because no updated address was

available. *Id*. As a result, the Claims Administrator successfully delivered direct mail notice to 63,883 Settlement Class Members, which equates to a reach rate of **approximately 97.43%** of the Settlement Class. *Id*. ¶ 12. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state a notice plan that reaches over 70% of class members is considered a high percentage and the "norm" of a notice campaign. *Id*.

The Claims Administrator also established the Settlement Website, providing Settlement Class Members with information regarding the terms of the Settlement Agreement, their rights, dates and deadlines and related Settlement information. The Settlement Website also include copies of documents related to the Settlement, including: (i) the Long Form Notice; (ii) the Claim Form; (iii) Plaintiff's Motion for Preliminary Approval; (iv) the Settlement Agreement; and (v) Plaintiff's Motion for Attorney's Fees and Expenses and Service Award. The Settlement Website also provided Settlement Class Members with the ability to complete and submit their Claim Form, and supporting documentation electronically through the Settlement Website. Simpluris Decl. ¶ 13; S.A. § IV.3.2(c). The Settlement Website has been available to the public and the Settlement Class since December 19, 2025, and since that date the Claims Administrator has reported that as of February 24, 2026, there have been at least 5,587 unique visitors and 17,039 page views on the Settlement Website. Simpluris Decl. ¶ 13. The Claims Administrator also established the toll-free number made available 24 hours a day 7 days a week, which was included on the Notices and on the Settlement Website, in order to allow Settlement Class Members to call and receive information regarding the Settlement. *Id*.

Considering the above, the Notice Program was designed to be the best practicable under the circumstances, apprised Settlement Class Members of the pendency of the Litigation and the proposed Settlement and provided them an opportunity to submit a Claim Form, object or exclude

themselves from the Settlement. Accordingly, the Notice provides Due Process under the U.S. and Texas Constitutions and complies with the Rule 23. *See* U.S. Const., amend. XIV; Tex. Const., Art. 1, § 19; Fed. R. Civ. P. 23(c)(2)(b) & (e)(1); Class Counsel Decl. ¶ 11.

### B. The Claims Process, Opt-Outs and Objections

Settlement Class Members were provided 90 days from the date the Claims Administrator commenced Notice to submit Claim Forms to receive monetary payment and credit monitoring, recover for fraud, identity theft, ordinary losses, and lost time attributable to the Data Incident. S.A. §§ IV.2.1.3, 3.3. The Settlement Class Members were also given the opportunity to request exclusion or opt out from receiving the Settlement's benefits by sending written notice to the Claims Administrator clearly manifesting their intent to be excluded from the Settlement Class within 60 days from the day the notice program commenced. S.A. § IV.4.1. In addition, Settlement Class Members were given the opportunity to object to the Settlement within 60 days from the day the notice program commenced by filing timely written notice of their objection. S.A. § IV.5.1. Because the Settlement is conditioned on this Court's approval, Settlement Class Members will not receive any Settlement Benefits unless the Court grants final approval of the Settlement.

As of February 24, 2026, the Claims Administrator has received 1,419 Claim Form submissions thus far (Simpluris Decl. ¶ 15), equivalent to approximately 2.16% of the Settlement Class. The Claims Deadline is March 19, 2026; therefore, the number of claims is anticipated to continue to increase. The Opt-Out Date and Objection Date passed on February 17, 2026, and the Claims Administrator has received **zero requests for exclusion and zero objections** from the Settlement Class. *Id*. ¶¶ 22, 24. This overwhelmingly positive response to the Settlement strongly supports final approval and affirms the Court's initial conclusion at the preliminary approval stage that the Settlement is fair, reasonable, adequate and in the best interest of the Settlement Class.

## V.    LEGAL STANDARD

Courts approve settlements under Rule 23(e). Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). At root, the analysis centers on whether the settlement is "fair, reasonable, and adequate" *Id*. And that concept considers four factors under Rule 23(e): (i) "adequacy of representation;" (ii) whether there were "arm's length" negotiations; (iii) "adequacy of relief;" and (iv) equity between class members. *Id*. Within the third factor, "adequacy of relief," the Court considers the case's risks, how the parties propose distributing relief, attorney's fees, and any other agreements impacting settlement. *Id*.

These factors overlap with Fifth Circuit precedent governing the approval process. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (identifying six factors for approval). The factors consider: (i) whether there was fraud or collusion when negotiating the agreement; (ii) the case's complexity; (iii) the litigation stage and discovery taken; (iv) the risk in litigating the case; (v) the "range of possible recovery;" and (vi) whether the class, class counsel, and plaintiff recommend the settlement. Because these factors overlap with one another, "courts in this circuit often combine them in analyzing class settlements." *ODonnell v. Harris Cnty., Texas*, No. CV H-16-1414, 22019 U.S. Dist. LEXIS 151159, at *26 (S.D. Tex. Sept. 5, 2019). In so doing, a district court must "keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 U.S. Dist. LEXIS 22547, at *16 (N.D. Tex. Dec. 11, 2003). That analysis does not mandate that plaintiffs maximize their recovery: "[a] proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010). Indeed, requiring a plaintiff to maximize

11

their recovery would defeat the point in settling, as "compromise is the essence of a settlement…the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978). In other words, barring any fraud or collusion, a district court should hesitate to "substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649.  Because the Settlement satisfies that analysis, is fair, adequate, and reasonable under Rule 23 criteria and the Fifth Circuit's *Reed* factors, this Court should grant final approval.

## VI.    ARGUMENT

### A.  The Settlement is Fair, Reasonable and Adequate

The Fifth Circuit lists six factors that a district court must consider in determining the fairness, reasonableness, and adequacy of a proposed settlement:

> (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.

*All Plaintiffs v. All Defendants*, 645 F.3d 329, 334 (5th Cir. 2011) (internal quotation marks omitted). These six factors are known as the "*Reed* factors," named after *Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983). *See id.* at 172. "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart Stores*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION, THIRD § 30.42 (1995)); *accord Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009); *Klein.*, 705 F. Supp. 2d, 650 ("When considering the *Reed* factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." (internal quotation marks and

alteration omitted)).

The Settlement is fair, adequate, and reasonable under Rule 23(e) and the *Reed* factors because it successfully provides relief to the Settlement Class Members impacted by the Data Incident now, without the delay, uncertainty, and risk of further litigation. The Settlement's benefits secure the relief demanded by Plaintiff in the Litigation by making monetary relief available for Settlement Class Members for their Out-of-Pocket Losses, Extraordinary Losses, Attested Lost Time, two (2) years of Credit Monitoring and Identity Theft Protection Services, as well as the costs of Notice and Claims Administration, Class Counsel's award of attorney's fees and costs, and the requested Service Award to the Class Representative.

**1.  The Court should presume the Settlement is Fair, Reasonable, and Adequate**

There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources." *Klein*, 705 F. Supp. 2d 632, 650. Further, in the "absence of any evidence to the contrary," the Court may also presume that "no fraud or collusion occurred between opposing counsel[.]" *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 U.S. Dist. LEXIS 227456, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018). 2 Herbert Newberg & Alba Conte, *Newberg on Class Action,* § 11.41 (3d ed. 1998) ("There is usually an initial presumption of fairness when a proposed settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval"); *Manual for Complex Litigation,* Third, § 30.42 (1995) (same).

Here, Plaintiff and Class Counsel qualify for the initial and strong presumption that this arm's-length class action settlement is fair. As discussed above, and in Plaintiff's preliminary approval motion, the parties engaged in arm's length settlement negotiations, including a full-date mediation facilitated by a mediator. The mediation involved extensive negotiations, discussions

13

and considerations of the case by each party. The negotiations were also informed by the exchange of discovery, allowing Class Counsel to understand the landscape affecting Settlement. *See In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1064 (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses"). The parties went into mediation willing to explore a potential settlement, but each was prepared to litigate their claims and defenses through trial and appeal if no settlement could be reached. After a full day of arm's length negotiations at the mediation, the parties reached a settlement was ultimately memorialized in the Settlement Agreement. At all times, the parties' settlement discussions were non-collusive and aimed at securing a resolution that fairly compensated the Settlement Class. both sides made substantial concessions in order to reach a fair settlement that provides the maximum benefits to both sides in light of the risks in further pursuing the litigation. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) ("[A]fter all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolutions.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir.1977)). The parties avoided any collusion by only discussing the amounts for Plaintiff's attorney's fees and costs and the proposed Service Award after an agreement on the relief and benefits provided by the Settlement to the Settlement Class.

Accordingly, the parties and the Settlement satisfied the requirements of Rule 23(3) and case law, such that the Court may start this analysis with the presumption of fairness.

### 2. The Complexity, Expense, and Likely Duration of the Litigation Favors Approval of the Settlement

The alternative to this settlement is to continue on a protracted litigation path, further consuming the litigants' energies and judicial resources, with no certainty as to the outcome. Prosecuting this litigation through significant motion practice, continued fact discovery and expert

14

discovery, and ultimately trial would likely be lengthy, complex, and impose significant costs on all parties. Also, any decision on the merits would likely be appealed, causing further delay, and would likely require briefing and oral argument. The Settlement takes into account the risks of continuing litigation, was the product of hard-fought negotiations, and optimizes the benefits to the Settlement Class given these risks. The Settlement delivers a real and substantial remedy, which fairly, reasonably, and adequately addresses the situation confronting the members of the Settlement Class, without the risk or delay inherent in prosecuting this matter through trial and appeal. Thus, this factor favors approval of the Settlement.

### 3. The Stage of the Proceedings and Discovery Completed Supports Approval

Under the third *Reed* factor, the key issue is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369. Class Counsel requested and received informal discovery from Dufresne preceding and during the mediation, which was targeted at information relevant to making an informed decision regarding settlement. *See* Manual for Complex Litigation (Fourth) at § 11.423 (2004) (noting that informal discovery is a recognized method of minimizing the cost, delay, and burden associated with formal discovery). "Formal discovery is not a prerequisite to settlement." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *19 (N.D. Tex. Nov. 8, 2005) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d at 211; *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998) (formal discovery is not necessary "where the parties have sufficient information to make an informed decision about settlement.")). The "[s]ufficiency of information does not depend on the amount of formal discovery that has been taken because other sources of information may be available to show that the settlement may be approved even when little or no formal discovery has been completed." *Garza v. Sporting Goods Properties, Inc.*, 1996

WL 56247, at *13 (W.D. Tex. Feb. 6, 1996). Class Counsel also have significant experience in data breach consumer class actions such as this Litigation (Class Counsel Decl. ¶ 25) and are thus well-informed of the legal claims at issue and the risks of continued litigation. As a result, Class Counsel were able to determine the settlement's adequacy in relation to the probability of success on the merits were this litigation to continue; and it is Class Counsel's good faith belief that the Settlement is fair, reasonable, and adequate, and in the best interest of Settlement Class Members.

    **4.  The Probability of Plaintiff's Success on the Merits Weighs in Favor of Approval**

Plaintiff and Class Counsel have considered a number of issues in the process of settlement negotiations and ultimately reaching this Settlement. Although Plaintiff and Class Counsel certainly believe the claims asserted in this litigation have merit, they recognize the risks involved in continuing this litigation, as a failure to prevail on any one of these claims could result in little, if any, compensation for the Settlement Class. Assuming that potential liability is found, Dufresne would undoubtedly argue that individual damages issues predominate over common liability issues, and certification of a class would be aggressively challenged. These hurdles would have to be cleared in any effort to litigate this case to a successful conclusion before Settlement Class Members could recover anything. Accordingly, the risks associated with continuing with the case, and the unknown result, directly impact the Court's consideration of this factor. The Settlement provides significant benefits for the Settlement Class without the delays and risks that would otherwise occur. Accordingly, weighing the immediate recovery that the Settlement provides against the uncertain prospect of recovery after contested and protracted litigation, favors final approval of the Settlement.

    **5.  The Settlement Falls Within the Range of Possible Recovery Based on Similar Lawsuits in This Area of Law.**

"[A] settlement is a compromise, a yielding of the highest hopes in exchange for certainty

16

and resolution." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank,* 55 F.3d 768, 806 (3d Cir. 1995) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). "Compromise is the essence of settlement and the court should not make the proponents of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of which concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton,* 559 F.2d at 1330. "A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." The district court's consideration of this factor "can take into account the challenges to recovery at trial that could preclude the class from collecting altogether, or from only obtaining a small amount." *Klein*, 705 F. Supp. 2d at 656. The question is not whether the parties have reached "exactly the remedy they would have asked the Court to enter absent the settlement," but instead "whether the settlement's terms fall within *a reasonable range of recovery*, given the likelihood of the plaintiffs' success on the merits." *Id.* (internal quotation marks omitted). *Klein*, 705 F. Supp. 2d at 649.

Here, estimating the range of possible recovery—in particular, the upper band of recovery—is difficult. As the analysis of the fourth *Reed* factor (probability of success on the merits) demonstrates, the lower end of the Plaintiff's range of recovery could be zero as a nationwide or multistate class perhaps could not be certified under Rule 23, or a judge or jury could conclude that Defendant was not ultimately liable. Also, the upper end of potential recovery could be far less than what the Settlement readily provides. Given that the claims in this litigation could require each class member to prove damages, and some class members may not yet have incurred out-of-pocket damages, even if a trial resulted in a finding of liability, it is difficult to measure possible recovery.

Also, importantly. this Settlement compares favorably to similar class action settlements granted final approval by this Court and other district courts. *See, e.g.*, *Flores v. Trussway Manufacturing, LLC*, No. 4:23-cv-02509 (S.D. Tex. May 31, 2024) (similar data breach class action settlement, which provided reimbursement for up to $500 for documented out-of-pocket expenses, reimbursement for up to three hours of lost time spent dealing with the Data Incident at $25 per hour, reimbursement for extraordinary losses up to $2,500 for documented expenses, one year of credit monitoring, and other security improvements ); *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. Mar. 20, 2012) (data breach class action settlement granted final approval, providing cash and injunctive relief for a class of 130 million credit card holders); *Dickey's Barbeque Restaurants, Inc.,* No. 20-cv-3424, ECF No. 62 (N.D. Tex.) (data breach class action involving more than 3 million people that settled for $2.3 million – approximately $0.76 per class member); *In re TJX Retail Securities Breach Litigation*, MDL Docket No. 1838, No. 1:07-cv-10162-WGY (D. Mass.) (data breach settlement providing 3 years of credit monitoring and identity theft insurance (a value of $390 per person), reimbursement of actual identity theft losses, and reimbursement of driver's license replacement costs, and cash of $15-$30 or store vouchers of $30- $60).

In sum, the concrete benefits of the Settlement, which are certain and available to the Settlement Class members without delay of protracted litigation, clearly outweigh the risks, uncertainties and costs, in both time and money, of continuing this complex litigation.

### 6. The Opinions of Class Counsel, the Class Representative, and the Reaction of absent Settlement Class Members Strongly Favors Final Approval

"Counsel are the Court's 'main source of information about the settlement,' *Manual for Complex Litigation* § 21.641, and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement. "The endorsement of class counsel is entitled to deference,

especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *DeHoyos,* 240 F.R.D. at 292; see also *Stott, 277 F.R.D. at 346* ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'" (quoting *Cotton,* 559 F.2d at 1330)).

Class Counsel, who have extensive experience conducting class action litigation, including specifically data breach cases, endorse the Settlement. *See* Class Counsel Decl. ¶ 28; *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1055 (adequacy satisfied when class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases"). Along with the meaningful Settlement Benefits made available to the Settlement Class under the Settlement, coupled with the fact that **there were no opt-outs and no objections received**, reinforce the argument that the Settlement Agreement should be approved as fair, reasonable, and adequate, and "that the settlement is in the interest of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression." *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (citation omitted). "Receipt of few or no objections 'can be viewed as indicative of the adequacy of the settlement.'" *Enron I*, 228 F.R.D. at 567 (quoting 4 HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 1141 (4th ed. 2002)); *accord, e.g., Sullivan*, 667 F.3d at 321. Thus, this factor also weighs strongly in favor of final approval.

Because all six of the *Reed* factors favor approval of the Settlement, Plaintiff and Class Counsel respectfully submit that the Court should conclude that the Settlement is fair, reasonable, and adequate under Rule 23(e).

**B. The Settlement Class Should Be Finally Certified for Settlement Purposes**

Under Rule 23(a), a class action may be maintained where the movant demonstrates that (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *See* Fed. R. Civ. P. 23(a); *see also Nelson v. Constant*, No. 3:20-CV-3042, 2020 WL 5258454, at *4 (E.D. La. Sept. 2, 2020) (citing Fed. R. Civ. P 23(a)). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Compared to a traditional certification analysis of a class that is not settled, the Court here undertakes a different analysis when certifying a class action that is settled. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court's review, in certain aspects, of a settlement-only class certification motion is lessened—without a trial, the case management issues need not be confronted. *Id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Indeed, courts have been certifying similar nationwide classes in data breach cases. *See, e.g., Flores v. Trussway Manufacturing, LLC*, No. 4:23-cv-02509, (S.D. Tex.); *In re Heartland Payment Systems,* Inc. Customer Data Sec. Breach Litig., 851 F. Supp. 2d 1040 (S.D. Tex. 2012); *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, No. 19-MD-2879, 341 F.R.D. 128 (D. Md. 2022); *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1

(M.D. Fla. Apr. 14, 2021). Similarly, this case should similarly be certified for settlement purposes.

With preliminary approval of the Settlement (Dkt. 21), the Court certified the Settlement Class for settlement purposes, thus finding that the requirements of Rule 23(a) and 23(b)(3) of Federal Rules of Civil Procedure were all met and the Settlement Class satisfies numerosity, commonality, typicality, adequacy of representation, predominance, and a class action and class settlement are superior and the most efficient and effective means for resolving the controversy. Given that nothing has changed since the Preliminary Approval Order, Plaintiff respectfully requests that the Court finally certify the Settlement Class.

### 1. The Settlement Class Meets the Criteria of Rule 23(a)

#### a. Numerosity

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The Fifth Circuit has found that a class of 100 to 150 members "is within the range that generally satisfie[s] the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Here, the Settlement Class consists of approximately 65,000 individuals. Therefore, numerosity is easily satisfied.

#### b. Commonality

Commonality requires Plaintiff to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and are capable of generating common answers "apt to drive the resolution of the litigation," even where the individuals are not identically situated. *See In re Heartland*, 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011)). Commonality can be satisfied by an "instance of the defendant's injurious conduct,

21

even when the resulting injurious effects—the damages—are diverse." *Nelson v. Constant*, 2020 WL 5258454, at \*5 (quoting *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014)).

Here, Plaintiff easily satisfies the commonality requirement because numerous common issues exist. For instance, common questions include whether Dufresne failed to adequately safeguard or was negligent in the safekeeping of the records of Plaintiff and the Settlement Class, whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Data Incident, and whether Defendant's data security systems prior to and during the Data Incident complied with applicable data security laws and regulations; and can be established by common proof and can be addressed on a class wide basis. Therefore, the commonality requirement of Rule 23 is satisfied.

### c.  Typicality

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Fed. R. Civ. P. 23(a)(3). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002); Fed. R. Civ. P. 23(a)(3). Here, Plaintiff's and Class Members' claims arise from the same nucleus of facts—the Data Incident—and are based on Defendant's same allegedly deficient security practices. Therefore, Rule 23(a)'s typicality requirement is satisfied.

### d.  Adequacy

Plaintiff and Plaintiff's counsel are adequate to represent the Settlement Class. Plaintiff does not have any conflicts of interest with the absent Settlement Class Members, as Plaintiff's claims are coextensive with those of the Settlement Class Members. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, fn. 13 (1982). Plaintiff and Class Counsel understand their responsibilities

in serving as Class Representatives and Class Counsel have committed themselves to vigorously pursuing litigation on behalf of the putative class and will continue to adequately represent the class through the Effective Date. *See* Class Counsel Decl. ¶¶ 4, 27; Dkt. 19-2, Declaration of Rosalyn Parker ("Parker Decl.") ¶¶ 7-8.

### 2.   The Settlement Class Satisfies Rule 23(b)

Rule 23(b)(3) provides a class action can be maintained where: (1) the questions of law and fact common to members of the class *predominate* over any questions affecting only individuals; and (2) the class action mechanism is *superior* to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). In the settlement context, the manageability criterion of Rule 23(b)(3)(D) does not apply. *Amchem*, 521 U.S. at 620.

### a.   Predominance

"In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). "Common questions that yield common answers" and are "apt to drive the resolution of this case" predominate over any individual issues. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 345 (2011). Several courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite, concluding variations in stated law went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (finding predominance was satisfied because "[p]laintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect [p]laintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that

23

these issues predominated over potential individual issues). Here, every Settlement Class Member was affected by the same Data Incident and received notice of the Data Incident by Dufresne. In this case, key predominating questions include whether Dufresne had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiff and the Settlement Class Members, and whether Dufresne breached that duty. Thus, predominance is satisfied.

### b. Superiority

Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating thousands of data breach cases arising out of the same Data Incident. A class action is the only reasonable method to fairly and efficiently adjudicate Class Members' claims against Defendant. *See Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available."). Resolution through individual actions is impracticable—the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1123 (9th Cir. 2017). Here, because the common questions of fact and law that arise from Dufresne's conduct predominate over any individualized issues among the Settlement Class Members, and a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met.

### C. Plaintiff's Motion for Award of Attorneys' Fees, Costs, and Service Award

#### 1. The Requested Award of Attorneys' Fees, Costs, and Expenses is Reasonable

As discussed in Plaintiff's Motion for Award of Attorneys' Fees, Costs, and Expenses and

24

Service Award (Dkt. 25), Class Counsel request an award of $300,000 in attorney's fees and costs combined, which *only approximately 9%* of the conservative estimate of the minimum monetary relief the Settlement makes available to the Settlement Class, and "reasonable" considering the *Johnson* factors (Dkt. 25 at 6-18). Class Counsel prosecuted this Litigation on a purely contingent basis and advanced all expenses necessary to litigate the case for the benefit of the Settlement Class with no guarantee these expenses would be recovered absent successfully securing relief for the Settlement Class. Dufresne does not oppose Class Counsel's requested award of attorneys' fees, costs and expenses of the Litigation in an amount not to exceed $300,000 (S.A. § IV.7.2); and there has been no opposition or any objection received from the Settlement Class Members.

## 2.    The Requested Service Award for the Class Representative is Reasonable

Plaintiff has diligently represented and pursued the interests of the Settlement Class by, among other things, providing information to facilitate Class Counsel's investigation of the Data Incident and contributed to the Complaint in the Litigation, communicated with Class Counsel regarding various issues pertaining to this case, and will continue to do so until the Settlement is approved, and its administration completed. *See* Dkt. 19-2, Parker Decl. ¶¶ 5, 7-8.  Also, Plaintiff has retained counsel with extensive experience in class and complex cases, including data breach litigation. Similar and larger incentive awards have been approved by courts in this Circuit, and the requested Service Award is therefore appropriate. *See, e.g., De Hoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) (approving award of $5,000 to plaintiff); *Flores v. Trussway Manufacturing, LLC*, No. 4:23-cv-02509 (S.D. Tex. 2024) (approving award of $2,100 to each named plaintiff). Class Counsel believe a modest Service Award of $2,500 fairly compensates Plaintiff for her personal effort in coming forward to initiate this case and the risk and commitment in pursuing this case for the benefit of the Settlement Class.

## VII.    CONCLUSION

Based on the above, the proposed Settlement satisfies the applicable standards for final approval. Accordingly, Plaintiff respectfully requests that the Court enter a Final Approval Order and Judgment, including (1) finding the Settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class; (2) awarding the requested attorney's fees and costs, and Service Award for the Class Representative; and (3) granting final approval of the Settlement, and final certification of the Settlement Class for settlement purposes.

Respectfully submitted,


Dated: February 25, 2026                    By: */s/ Mona Amini*
                                                 Abbas Kazerounian (TX SBN: 24090982)
                                                 Mona Amini, Esq.
                                                 **KAZEROUNI LAW GROUP, APC**
                                                 245 Fischer Ave., Unit D1
                                                 Costa Mesa, CA 92626
                                                 Telephone: (800) 400-6808
                                                 Facsimile: (800) 520-5523

                                                 *Counsel for Plaintiff*

26

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing to be filed electronically using the Court's electronic case filing (ECF) system, which will automatically send a notice of electronic filing to the email addresses of all counsel of record.

Dated: February 25, 2026                    By: */s/ Mona Amini*
                                                 Mona Amini

27